**HONEYWELL INC.**

v.

**The UNITED STATES.**

**No. 443–79C.**

United States Court of Claims.

Sept. 23, 1981.

Roger N. Boyd, Washington, D.C., atty. of record, for plaintiff. L. Graeme Bell, III, Thomas C. Means, Crowell & Moring, Washington, D.C., K. H. DeRoche, Tampa, Fla., P. S. Virden, Jr., Minneapolis, Minn., Honeywell Inc., of counsel.

Kathleen A. Flynn, Washington, D.C., with whom was Acting Asst. Atty. Gen., Thomas S. Martin, Washington, D.C., for defendant. Richard F. Pier, Defense Logistics Agency, of counsel.

Before NICHOLS, BENNETT and SMITH, Judges.

## OPINION

BENNETT, Judge, delivered the opinion of the court:

Plaintiff has moved for summary judgment in this contract case on the grounds that the decision of the Armed Services Board of Contract Appeals (the board) is erroneous and not entitled to finality because it fails to comply with the standards of the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1976). The failure is said to rest upon both errors of fact and law. Defendant has filed a cross-motion for summary judgment, and asks that we sustain the board. Plaintiff has also suggested that we refer the case to a trial judge for his analysis of the administrative record, which has been supplied to the court. We do not think this to be necessary. Upon consideration of that record, the motions, and six briefs filed by the parties, we sustain the board decision as

correct in both fact and law and as comporting fully with the standards of review provided by the Wunderlich Act. The board decision, *Honeywell, Inc.*, ASBCA No. 21518, 79–1 BCA ¶ 13,652, was issued on January 9, 1979. Plaintiff's petition was filed here on September 27, 1979.

This dispute arose when, on August 30, 1976, defendant's Corporate Administrative Contracting Officer (CACO) issued a final decision disallowing from plaintiff's overhead rate for the calendar year 1974, the sum of $134,664 of the building rental costs incurred for two of plaintiff's plants at its aerospace division facility in St. Petersburg, Florida. The disallowance was based upon the CACO's interpretation of Armed Services Procurement Regulation (ASPR) 15–205.34, effective March 1, 1970. This is the so-called Revised Cost Principle which controls the allowability of contractors' costs of renting real and personal property with respect to contracts awarded after its effective date.

Before March 1, 1970, contractors' allowable rental costs were limited by a "reasonableness" standard in the cited ASPR. The Revised Cost Principle, however, introduced a distinction between long-term and short-term leasing. The reasonableness standard was retained only for short-term leasing. Criteria for rental costs incurred under long-term leasing were revised to limit such rental costs to the total costs which the contractor would have incurred had the contractor owned, rather than leased, the property. This cost of ownership standard is also called the purchase cost or least cost principle. The CACO determined, and the board agreed, that the options exercised by plaintiff on two separate leases after the effective date of the changed ASPR were to be treated as long-term leasing under that regulation. This is a test case which the parties have stipulated will determine the issue as to many other contracts held by the contractor and listed in the record. ASPR 15–205.34 provides in pertinent part:

15–205.34 *Rental Costs (Including Sale and Leaseback of Property).* (CWAS)

(a) This paragraph 15–205.34 is applicable to the cost of renting or leasing all property, real and personal, except automatic data processing equipment (ADPE). (See 15–205.48.)

(b) As used in this paragraph, the words and phrases defined in this subparagraph (b) shall have the meanings set forth below.

(1) *Short-term leasing* means leasing where the cumulative term of the use or occupancy (initial term plus additional terms whether or not pursuant to a renewal option) is 2 years or less for personal property and 5 years or less for real property.

(2) *Long-term leasing* means leasing where the cumulative term of the use or occupancy (initial term plus additional terms whether or not pursuant to a renewal option) is more than 2 years for personal property and more than 5 years for real property. Leasing with initial terms of more than 2 years for personal property and more than 5 years for real property is long-term leasing as of the effective date. Leasing with initial terms of 2 years or less for personal property and 5 years or less for real property becomes long-term leasing as of the effective date of the document which extends the cumulative term to more than 2 or 5 years and will be treated as short-term leasing prior to such date and long-term leasing on such date.

\* \* \* \* \* \*

(h) Rental costs under long-term leasing entered into prior to the effective date of this 15–205.34 are allowable for the remaining term of the lease (excluding unexercised options) to the extent they would have been allowable under 15–205.34 dated January 1, 1969.

The issues as presented by the parties are several but can be simply stated. Should the options exercised by plaintiff after the effective date of the Revised Cost Principle contained in the ASPR be treated as long-term leasing when the extension effected by exercise of the option is under 5 years by

itself? Can the so-called legislative history behind the Principle alter the language of it as stated in the ASPR? Does the contract construction rule of *contra proferentem* apply to the interpretation of a regulation which is also a contract term? Did the board make factual errors in finding that the drafters of the Revised Cost Principle had rejected the interpretation plaintiff now advocates? Did the board err in finding that certain individuals were not the true drafters and that there was no evidence of any ambiguity in the ASPR? Did the board err in construing the "grandfather clause" (15–205.34(h)) to be express authority for the disallowance of plaintiff's rental costs?

■ In review of the board findings and opinion, we must sustain it unless we find it to be arbitrary, capricious, or not supported by substantial evidence. We do not understand plaintiff to contend that the administrative decision is fraudulent or that it was made in bad faith. The board did not answer the above questions in plaintiff's favor, nor can we. Plaintiff has made a valiant effort to convince the court otherwise but we are not persuaded.

■ The board ruled, as a matter of law, that the options exercised by plaintiff after the effective date of the revised ASPR were to be treated as long-term leasing. This ruling is not binding on the court but we find it to be well supported by the clear language of the ASPR's definitions applied to the facts of the case. Nor does the so-called grandfather clause help plaintiff. This clause was designed simply to insulate those periods of long-term leases which had been entered into prior to March 1, 1970, over which a contractor had no control. But, the clause is not relevant to whether a lease is a short-term one or a long-term one. Plaintiff was protected by this clause under its leases until the expiration of their original terms but not for the periods covered by option to extend them. The option to extend gave plaintiff the opportunity to avoid the effect of the Principle by purchase of the property or by making new leases whose cost was equal to or less than the cost of ownership. When plaintiff exercised the options to extend its leases, it was on notice that those extensions were not protected by the grandfather clause. Plaintiff's interpretation of the regulation would render it without meaning. That is to say, plaintiff's interpretation would make the definitions of long- and short-term leasing inapplicable to the Revised Cost Principle options. As the board held, plaintiff would have us reach an unreasonable result at variance with the policy and purpose of the regulation.

■ Plaintiff contends that the ASPR is ambiguous and that the board's failure to rely on certain testimony and a letter to clarify it, when it interpreted the regulation, is reversible error. The ASPR committee charged with making the change had an ad hoc subcommittee of three persons to make the initial draft. It is the testimony of two of these individuals and a letter from the third that plaintiff relies on as "legislative history." The testimony was given over 8 years after the effective date of the ASPR and the letter more than 6 years later. We do not find such statements to be of probative value. *United States v. Wise*, 370 U.S. 405, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962); *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1080 (5th Cir.), *cert. denied*, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980). Especially is this so when out-of-date statements are submitted in the context of a vigorous dispute. *Strawberry Water Users Ass'n v. United States*, 222 Ct.Cl. ——, 611 F.2d 838 (1979), *cert. denied*, 447 U.S. 935, 100 S.Ct. 3037, 65 L.Ed.2d 1130 (1980); *Aparacor, Inc. v. United States*, 215 Ct.Cl. 596, 571 F.2d 552 (1978). Cases relied upon by plaintiff to the contrary are distinguishable. In any event, the letter and testimony of one subcommittee member supports the defendant's position and the testimony of the other witness may be discarded as he was not a member of the ASPR committee which promulgated the change and was later a paid consultant to plaintiff. For similar reasons we disregard the subcommittee report on the comment of the Machinery and Allied Products

Industry which plaintiff argues supports its position that its option should be treated as short-term leases, although defined otherwise. The board decision places this issue in proper context. Entirely aside from the question of whether the ad hoc subcommittee even considered the narrow issue now raised by plaintiff, its members were not responsible for the final promulgation of the regulation and are not competent to testify with authority about the intention of the ASPR committee. The board did not err on this issue. Nor did the board err in deciding that legislative history is, in any event, unnecessary when the language and purpose of the regulation is plain. *United States v. Missouri Pacific R.R.*, 278 U.S. 269, 277–78, 49 S.Ct. 133, 136, 73 L.Ed. 322 (1929). Further, in construing administrative regulations, the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation. *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); *Barrington Manor Apts. Corp. v. United States*, 198 Ct.Cl. 298, 304, 459 F.2d 499, 502–03 (1972); *cf. Harold v. United States*, 225 Ct.Cl. ——, 634 F.2d 547 (1980) (administrative interpretation held inconsistent with regulation).

Assuming ambiguity in the ASPR, which we do not find, plaintiff would have us to invoke the *contra proferentem* rule against defendant for creating the ambiguity. Plaintiff misunderstands the difference between interpretation of a contract clause and interpreting a regulation or statute. In case of the latter, the court's duty is to effectuate the intent of the promulgators of the regulation or statute. *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962). A contract clause is construed in order to give it the effect intended by both parties. These are mutually exclusive rules of construction. The fact that a regulation may be incorporated into a contract does not require a different rule for regulation interpretation. We reject plaintiff's argument that the

board made a reversible error by not placing the burden of proof on the defendant. The defendant proved to the board that its interpretation comported with the plain meaning of the Revised Cost Principle as stated in the ASPR. Grandfather clauses are construed strictly against those who invoke them. *United States v. Allan Drug Corp.*, 357 F.2d 713, 718 (10th Cir.), *cert. denied*, 385 U.S. 899, 87 S.Ct. 203, 17 L.Ed.2d 131 (1966); *Durovic v. Richardson*, 479 F.2d 242, 250 (7th Cir.), *cert. denied*, 414 U.S. 944, 94 S.Ct. 232, 38 L.Ed.2d 168 (1973). Plaintiff failed to carry its burden of proof.

In its supplemental reply brief, plaintiff relies on a negotiation report which the Navy entered into with Aeronutronic-Ford Corporation. After defendant's cross-motion for summary judgment had been filed, plaintiff asked that we suspend proceedings while it petitioned the board to reopen the record to consider this report which it said was newly discovered evidence. We permitted this and the board considered the matter, rejecting plaintiff's evidence as cumulative, redundant, and without probative value. The board refused plaintiff's motion to reopen the administrative record to make the report a part of it. We do not, therefore, consider it here. The board also refused to reconsider its January 9, 1979, decision which is the subject of the instant proceeding. ASBCA No. 21518 on reconsideration, March 6, 1981. The board reiterated that it did not find the ASPR ambiguous but that, on the contrary, its meaning is plain, notwithstanding the doubts that plaintiff and others in the industry or elsewhere seek to cast upon it.

We could say much more, but need not do so, for the board has said it all well and we agree with the board. With greatest deference to plaintiff's able counsel, plaintiff has not made its case for reversal of the board's decision. In short, the ASPR definitions of long- and short-term leasing expressly include the terms of plaintiff's option. Since the cumulative terms of plaintiff's leases exceed 5 years, the options were properly considered as long-term leases by the board. The Revised Cost Principle as stated by the

ASPR is unambiguous. The grandfather clause plainly provides that the options are not exempt from the least cost principle stated in the ASPR. When the meaning of the regulation is clear on its face, the court does not have to consider the history which led to its announcement. The *contra proferentem* rule does not apply to regulations. Plaintiff would have the court construe the regulation contrary to its plain meaning. The board refused to so construe it, and the board was correct as a matter of law. We affirm the board's decision.

Plaintiff's motion for summary judgment is denied. Defendant's cross-motion for summary judgment is granted. The petition is dismissed.